# AFFIDAVIT

I, Frank Scalise, being duly sworn, declare and state as follows:

## INTRODUCTION

1. I am currently a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA). I was deputized as a federal TFO pursuant to Title 21, United States Code, Section 878 on April 8, 2019, and I am designated by the Attorney General, through approved delegations of authority, to execute and serve search warrants and arrest warrants issued under the authority of the United States. Accordingly, I am serving as a "federal law enforcement officer" as defined in Federal Rule of Criminal Procedure 41(a)(2)(C). Prior to working as a full-time DEA TFO, I was assigned as a Detective at the Milton, Vermont Police Department since February 2015. I have been a certified full-time law enforcement officer with the Milton, Vermont Police Department since May 2010. I have participated in numerous state and federal investigations into the distribution of different types of controlled substances and am familiar with the patterns of drug traffickers.

2. Through my training and experience, I also know that distributors of illegal drugs make frequent trips to and from supply sources, frequently located in other cities. I also know that distributors of illegal drugs often utilize a "stash" location, at which bulk drugs and/or drug proceeds are stored, separate from where drug transactions are conducted. The distributor utilizes "stash" locations to prevent law enforcement from recovering "stashed" items should the location where transactions occur be subject to search.

## PURPOSE OF AFFIDAVIT

3. This affidavit is made in support of search warrants for the following premises:

   a. Room 271 of the DoubleTree Hotel, located at 870 Williston Road, South Burlington, Vermont (SUBJECT PREMISES).

4. The SUBJECT PREMISES is described in Attachment A1 and the items to be seized from that location are described in Attachment B1. The items to be seized are the evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Section 841(a) (possession with intent to distribute and distribution of controlled substances).

5. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## PROBABLE CAUSE

6. The United States, including the DEA, is conducting a criminal investigation of Sean R. Petty regarding possible violations of Title 21, United States Code, Section 841(a) (distribution of controlled substances).

## 2019 CONTROLLED PURCHASE

7. In December 2018, Burlington Police Department (BPD) Detectives obtained the agreement of a Cooperating Subject (CS) to assist BPD with investigating drug trafficking in exchange for monetary compensation. CS had previously worked with BPD and provided reliable information, and conducted controlled purchases resulted in arrests. The CS has criminal convictions for the following offenses: Buy, Receive, Sell, Possess, Conceal Stolen Property $900 or less; Violation of Conditions of Release; Burglary; Identity Theft; Grand Larceny; Fraud – Credit Card Use; Assault – Simple; Forgery – Utter/Publish an Instrument x2; Forgery; Non-Controlled Drug – Sell as Controlled; Burglary – Occupied Dwelling.

8. On May 8, 2019, the CS told BPD Detective Richard Weinisch and DEA TFO Phillip Tremblay that it knew of a group of individuals selling cocaine base utilizing cell phone 207-702-7003. The CS admitted it had purchased cocaine base from this group on multiple prior occasions, and knew the group to utilize multiple vehicles to distribute controlled substances.

The CS agreed to conduct a controlled purchase into 207-702-7003, and proceeded to make phone calls monitored by law enforcement to arrange a transaction. A male voice answered the phone, and advised CS that the male would meet CS at the Buffalo Wild Wings restaurant in 10 minutes.

9. CS was outfitted with audio and video electronic monitoring devices, and provided serialized currency to purchase $100 worth of cocaine base. A search of the CS prior to the transaction revealed no drugs, paraphernalia, or large sums of money. CS was transported to the area of the Buffalo Wild Wings by law enforcement, and surveilled by law enforcement. CS advised thereafter via the monitoring devices that CS had received a call changing the location. CS relayed new location information via the monitoring device, and was surveilled as CS walked to the new location on Wells Street. On Wells Street, BPD Detective Sergeant Dan Merchand observed CS enter a white Dodge van with Minnesota registration BEH323. Via the security wire, TFO Tremblay heard the CS state it had a "hundo" and shortly thereafter, CS left the vehicle. CS was surveilled on foot until it re-entered a law enforcement vehicle.

10. Upon reentering the law enforcement vehicle, CS provided TFO Tremblay with a plastic bag corner containing a white rock-like substance. The substance later field-tested positive for cocaine. CS was again searched, and no drugs, paraphernalia, or large sums of money were found. CS provided a post-buy statement consistent with law enforcement surveillance. CS stated that the drug transaction occurred inside the white Dodge van with the van's sole occupant, a 25-35 year old heavyset male with a small "soul patch" goatee.

11. A query with the Department of Motor Vehicles (DMV) showed the Dodge Van registered to EAN Holdings LLC, which I know to be the legal listing for Enterprise Rental Vehicles. I spoke with a representative from Enterprise who advised that the vehicle was rented in Michigan (from April 29 – May 20) by Ernell Perry (DOB 11/27/1960). Phone numbers provided for Ernell Perry were 313-586-2124 and 313-728-7040. The address listed for Perry was 18656 Sherwood St, Detroit, MI 48234.

12. On the evening of May 8, 2019, Officer Bowers conducted a traffic stop on the Dodge Van (MN registration BEH323). The operator was identified as Sean R. Petty (DOB 11/30/1994) out of Detroit, MI, with a listed address of 18656 Sherwood St (the same address as the person who rented the vehicle). Officer Bowers captured a still shot of Petty from his axon body camera footage. The CS later viewed that photograph and advised it appeared to be the same male who it had purchased the cocaine base.

## 2021 TRAFFIC STOP AND SEIZURE

13. On May 11, 2021, agents with the DEA BRO set up surveillance at 770 Bean Road in Colchester, Vermont, a multi-unit residential structure. William Snow, who is believed to be a cocaine base user, resides at this residence. This location was previously known to me as a drug involved premises. Specifically, law enforcement surveillance on April 20, 2021 resulted in the traffic stop of a vehicle whose occupants had made a short-duration stop at the same address. The traffic stop resulted in the seizure of approximately 9 grams of cocaine base, $871 of United States Currency, and two cellular telephones.

14. During remote surveillance on May 11, 2021, at approximately 2:51 pm, a white minivan arrived at the parking lot for 770 Bean Road. William Snow exited 770 Bean Road, and approached the minivan. The interactions between Snow and the occupants of the minivan were obstructed. Approximately 30 seconds later, Snow returned into the residence. The white minivan then departed 770 Bean Road.

15. Law enforcement began surveillance the white minivan, and identified it as a Dodge Caravan with Massachusetts registration 1DWL63. A check of the registration revealed the vehicle was a rental vehicle owned by EAN Holdings. The Dodge Caravan was followed by law enforcement onto Mallets Bay Avenue in Winooski, where the vehicle turned left at a stop sign without utilizing a signal. The Dodge Caravan is surveilled into Burlington, and the driver of the van drove in a manner consistent with countersurveillance. A traffic stop of the Dodge Caravan was conducted on North Street in Burlington for the failure to signal.

16. DEA TFO McCormick spoke to the operator, who was identified as Sean R. Petty (DOB: 11/30/1994). I recognized Petty from the controlled purchase investigation outlined above, and directed DEA TFO McCormick to take Petty into custody. I spoke to the passenger, who was later identified as Joseph Reed (DOB: 10/15/1997), who was seated in the middle row of seats behind the front passenger seat. I ordered Reed to get out of the vehicle. Reed informed me his only property in the vehicle was a cell phone. Reed was asked what he was doing in Burlington, and he stated he was "seeing a girl." Reed was allowed to depart.

17. DEA SA Kristian Pinkham secured the vehicle pending a tow truck. The vehicle was towed to the Burlington Police Department. A Milton Police Department K9 Officer Jones responded to BPD with his K-9 Biscotti. K-9 Biscotti was deployed on the vehicle. K-9 Biscotti alerted to the driver's door of the vehicle. A subsequent search of the vehicle resulted in the location of approximately 50 grams of cocaine base secreted in the headliner located in the middle of the passenger area. The drugs were located directly above where Reed was seated at the time of the traffic stop. Also in the headliner was approximately $900 of U.S. Currency, an empty plastic vacuum-seal bag, and a cellular phone. An additional three cellphones were located in the van during the search. In the map pocket of the front passenger seat, located directly in front of where Reed was seated, officers located two plastic cards consistent with hotel keys.

18. The 50 grams of seized cocaine base was in two separate plastic baggies. One bag contained approximately 10 grams of individually packaged cocaine base. The second bag contained what appeared to be bulk cocaine base weighing approximately 42 grams. The cocaine base field-tested positive for cocaine base utilizing a TruNarc field testing device.

19. The empty packaging located in the headliner was consistent in size with the packaging for the 42 grams of bulk cocaine base. I therefore believe there was originally two packages of bulk cocaine base. The cash seized from the headliner was not consistent with the street value of the drugs I believe to have been distributed from this bulk package.

20.  During a search incident to arrest of Petty, officers located a plastic card consistent with being a hotel key.

## DOUBLETREE INVESTIGATION

21.  DEA agents responded to area hotels, in an effort to locate the hotel corresponding to the suspected key cards. DEA SA Pinkham and TFO McCormick were able to identify the DoubleTree located at 870 Williston Road in South Burlington, Vermont as the likely hotel location corresponding to the key cards. Customer service at the DoubleTree confirmed the three keys were encoded for rooms at their property. The key recovered from Petty corresponded to Room 271 (SUBJECT PREMISES). One of the two keys recovered from the van near where Reed was seated corresponded to Room 271 (SUBJECT PREMISES). The second key was no longer active, but had previously been active for a different room at the DoubleTree.

22.  DoubleTree customer service informed DEA SA Pinkham that Room 271 was rented to French Brandon with an address of 230 Saint Paul Street in Burlington. DEA TFO Tremblay spoke to the building manager of 230 Saint Paul Street, who informed Tremblay that he was aware of Brandon, that Brandon had admitted to the building manager that he used controlled substances, and that the building manager suspected Brandon of drug involvements.

23.  While agents were at the Doubletree, DEA TFO Perry observed Reed walking toward the DoubleTree. Reed was detained due to the cocaine base seized from the Dodge Caravan as outlined above. Reed informed investigators that his hotel room was rented by a female. However, French Brandon is known to be male.

24.  Agents have been posted at the hotel since encountering Reed to secure the rooms.

25. Petty was released by BPD after processing at approximately 7:52 pm. At approximately 8:16 pm, Petty returned to the DoubleTree. Petty knocked on the door to Room 271 (SUBJECT PREMISES), and no one answered. Petty was prevented from entering the room and told TFO Chris May that his room was rented by an older friend, and he was not worried about the contents of the room. Petty indicated he wanted to retrieve some belongings from the room and take a shower.

26. I know, based on my training and experience, that out-of-state drug traffickers utilize drug-addicted individuals to rent them hotel rooms in exchange for drugs in areas where they travel to distribute controlled substances. This is done to obscure the identity of the drug trafficker. I also know that drug traffickers frequently use hotel rooms as a base of operation while engaging in drug trafficking. They utilize the hotel room to package controlled substances for distribution, store drug proceeds, and store bulk controlled substances. Both Petty and Reed are believed to be residents of Michigan. I therefore believe there is probable cause to believe the hotel room linked to Petty and Reed is likely to contain evidence of violations of 21 U.S.C. § 841(a).

## CONCLUSION

27. For all the reasons described above, there is probable cause to believe that the items listed in Attachment B, which constitute evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Section 841(a) (possession with intent to distribute and distribution of controlled substances) will be found at the SUBJECT PREMISES, as described in Attachment A.

Respectfully submitted,

_____
Frank Scalise
DEA Task Force Officer


Subscribed and sworn to before me on this 11th day of May 2021

_____
HON. KEVIN J. DOYLE
United States Magistrate Judge
District of Vermont